UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNIE SCOTT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JIM ROBERTSON, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-06046-HSG<br><br>**ORDER OF PARTIAL SERVICE; DISMISSING SPECIFIED CLAIM AND DEFENDANT WITH LEAVE TO AMEND** |

**INTRODUCTION**

Plaintiff, an inmate at Pelican Bay State Prison ("PBSP"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that PBSP Warden Robertson, Dr. Kumar, and RN Golding violated his constitutional rights. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order. His complaint (ECF No. 1) is now before the Court for review under 28 U.S.C. § 1915A.

**DISCUSSION**

**A.　Standard of Review**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity, or from an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b) (1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Complaint**

The complaint names as defendants PBSP Dr. Kumar, PBSP Rn Golding, and PBSP Warden Robertson. The complaint makes the following allegations.

On August 31, 2018, plaintiff was attacked by two other inmates during a riot. Plaintiff fell to the ground and injured his right thumb while trying to break his fall. Plaintiff's thumb was dislocated and fractured in multiple areas. On September 7, 2018, plaintiff was seen by RN Golding who opined that it was probably just a sprain and told plaintiff to "quit whining." RN Golding failed to provide plaintiff with a split to prevent further injury. On September 10, 2018, plaintiff informed Dr. Kumar via institutional mail that he needed immediate medical care. Plaintiff did not receive a response. On October 4, 2018, plaintiff was examined by Dr. Kumar, who ordered an x-ray of the thumb. Dr. Kumar falsely reported in his medical notes for this visit that plaintiff had no pain and little stiffness in his thumb, and that plaintiff declined his offer for a splint. Dr. Kumar also seemed to question whether the thumb was broken.

On October 8, 2018, plaintiff's x-ray results came back. Dr. Kumar interpreted the x-ray as only showing a dislocated thumb. However, on October 18, 2018, Dr. Cross, an orthopedic surgeon, interpreted the x-ray as showing evidence of fractures. Dr. Kumar never informed plaintiff that his thumb was fractured. Plaintiff did not learn of the fractures or of the other

2

injuries associated with the dislocation until December 6, 2018, when LVN Salazar gave plaintiff his CT scan results. The CT scan results prompted plaintiff to submit another grievance against Dr. Kumar for failing to inform him of his injuries and to request an Olsen review of his entire medical file. Upon reviewing his medical file, Plaintiff learned of Dr. Cross's findings. Dr. Cross also determined that plaintiff had suffered significant injury and that repair was beyond his expertise. Dr. Cross referred plaintiff to an outside hand specialist.

On November 2, 2018, plaintiff was seen by Dr. Doeback, a hand specialist. Dr. Doeback was the doctor who ordered that the prison perform a CT scan on plaintiff's right thumb. Dr. Doeback provided plaintiff with a splint. Dr. Doeback originally recommended that the thumb fracture be treated with an open reduction with pinning but after further reviewing plaintiff's x-rays, determined that there was nothing that could be done to save plaintiff's thumb. Dr. Doeback stated the x-rays revealed that not only did plaintiff's thumb heal in the wrong positions but it also lacked a congruent joint. Dr. Doeback indicated to plaintiff that if the prison had not waited five months to have plaintiff's thumb set and placed into a cast, Dr. Doeback might have been able to save the thumb. Dr. Doeback stated that the only available treatment option was a fusion, which would result in plaintiff losing complete mobility in one of his thumb joints. Dr. Doeback told plaintiff that because of the surgery's irreversible results, the surgery should be a last option, only to be pursued if the pain persisted. Dr. Doeback scheduled a five-month followup to determine whether the surgery would be warranted.

On June 7, 2019, about two weeks before plaintiff's followup appointment with Dr. Doeback, RN Golding attempted to get plaintiff to have the surgery by calling him to the medical clinic to sign some intake forms for a surgical procedure. Plaintiff did not know what the forms were for, so told RN Golding that he would have to look over the forms before signing them. The following week, RN Golding sent medical personnel to plaintiff's housing unit to retrieve the forms. Plaintiff informed medical staff that he refused to consent to a medical procedure that was not warranted and that involved signficant risk.

On June 17, 2019, the day that plaintiff was scheduled to see Dr. Doeback, he was sent to a different outside hand specialist, Dr. Perry, who also agreed that surgery was unwarranted at the

time. Dr. Perry informed plaintiff that he would be disabled and that plaintiff should not be forced to have the surgery.

Warden Robertson is legally responsible for the welfare of all PBSP inmates and oversaw Dr. Kumar and RN Golding's actions.

As a result of the above actions by defendants, plaintiff has limited mobility and permanent disfigurement in his right thumb.

**C.    Legal Claims**

   **1.    "Eighth Amendment Delayed Medical Care"**

The complaint's allegation that Dr. Kumar and RN Golding delayed in providing appropriate medical care for plaintiff's fractured thumb states a cognizable Eighth Amendment claim. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1059, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). For the reasons set forth below, the complaint's allegation that Warden Roberston delayed in providing appropriate medical care for plaintiff's fractured thumb fails to state a cognizable Eighth Amendment claim.

   **2.    "14th Amendment - Due Process, Violation of Mandatory Duties"**

Plaintiff alleges that defendants' failure to provide immediate medical care as required by Section 845.6 of the California Government Code violated his rights under the Due Process Clause of the Fourteenth Amendment. Section 845.6 provides that a public employee, including correctional officials, is liable if the employee knows or has reason to know that a prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Cal. Gov't Code 845.6. "[T]o state a claim under § 845.6, a prisoner must establish three

4

elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summons such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Plaintiff has stated a cognizable state-law claim against Dr. Kumar and RN Golding for violation of Cal. Gov't Code 845.6. The Court will exercise supplemental jurisdiction over plaintiff's state law claim because the state law claim and the above Eighth Amendment claim are based upon the same allegations of deliberate indifference to serious medical needs. *See* 28 U.S.C. § 1367 ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (federal courts authorized to assert jurisdiction over state law claims when "[t]he state and federal claims . . . derive from a common nucleus of operative fact," such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are "substantial[].").

However, plaintiff has not stated a cognizable federal due process claim against any defendant. Generally speaking, where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, e.g., the Takings Clause of the Fifth Amendment, that Amendment, not the more generalized notion of "substantive due process," must be used to analyze such claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Substantive due process does not extend to circumstances already addressed by other constitutional provisions. *See Albright*, 510 U.S. at 273 (constitutionality of arrest may only be challenged under Fourth Amendment); *Fontana v. Haskin*, 262 F.3d 871, 882 & n.6 (9th Cir. 2001) (sexual harassment by a police officer of criminal suspect during seizure is analyzed under Fourth Amendment, whereas sexual misconduct by officer toward another generally is analyzed under substantive due process); *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (substantive due process claim improper when Equal Protection Clause covers racially discriminatory actions alleged), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Here, the Eighth Amendment provides an explicit textual

source of constitutional protection with respect to plaintiff's allegations that he was in need of immediate medical care and that Dr. Kumar and RN Golding failed to provide that care. The federal due process claim is therefore DISMISSED with prejudice because amendment would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citation and internal quotation marks omitted).

### 3. "Fourteenth Amendment Equal Treatment of Laws"

Plaintiff's equal protection claim states as follows:
Defendants have violated Plaintiff's rights guaranteed by the 14th Amendment to the United States Constitution in that the Plaintiff was denied the equal protection of the laws when the defendants allowed the Plaintiff to suffer further significant injury either through their failure to follow proper procedure or through the failure to follow other laws which govern the treatment of such injuries.

Dkt. No. 1 at 11. Plaintiff has not stated a cognizable equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiff has not alleged that he was treated differently from similarly situated persons, as would be required to state an equal protection claim. Because it appears that this deficiency could be remedied, the Court DISMISSES this claim with leave to amend if plaintiff can truthfully do so. *See also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (leave to amend "should be granted more liberally to *pro se* plaintiffs") (citation omitted).

To assist plaintiff in determining whether he has a cognizable equal protection claim, the Court reviews the relevant jurisprudence. A plaintiff alleging that he was denied equal protection of the laws based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because

of plaintiff's membership in a protected class. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). When a prisoner challenges his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim, a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). Where a prisoner alleges that he is being treated differently from non-prisoners, other circuits have found no equal protection claim as there is a "fundamental difference between normal society and prison society," *Glouser v. Parratt*, 605 F.2d 419, 420 (8th Cir. 1979) (citing *Meyers v. Alldredge*, 429 F.2d 296, 310 (3d Cir. 1974)), and rules designed to govern those functioning in a free society cannot be automatically applied to the very different situation presented in a state prison, *id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974), for proposition that full panoply of rights due a defendant in criminal proceedings do not apply to prison disciplinary proceedings). Prisoners and non-prisoners simply are not similarly situated. *Hrbek v. Farrier*, 787 F.2d 414, 417 (8th Cir. 1986). Proof of class-based discrimination is not always required, however. *Engquist v. Oregon Dep't. of Agriculture*, 553 U.S. 591, 601 (2008). Where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish an equal protection "class of one" claim by demonstrating that the state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3) without a rational basis. *Gerhart v. Lake County Montana*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

**4. Warden Robertson**

Plaintiff has failed to state a Section 1983 claim against Warden Robertson. The only factual allegations against Warden Robertson is that he is legally responsible for the welfare of all PBSP inmates and oversaw Dr. Kumar and RN Golding's actions. There is no supervisory liability under Section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only responsible for his or her own misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). To state a claim for relief under Section 1983 based on a theory of

7

supervisory liability, plaintiff must allege some facts that would support a claim that (1) Warden Robertson proximately caused the alleged constitutional violations, *see Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); or (2) Warden Robertson failed to properly train or supervise personnel resulting in the alleged constitutional violations, *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984); (3) the alleged constitutional violations resulted from a custom or policy for which Warden Robertson was responsible, *see id.*; or (4) Warden Robertson knew of the alleged misconduct and failed to act to prevent future misconduct, *Taylor*, 880 F.2d at 1045. Because it appears possible that plaintiff may be able to correct this deficiency, the Court will dismiss the excessive force claim against Warden Robertson with leave to amend, if plaintiff can truthfully do so. *See Lopez*, 203 F.3d at 1130; *see also Ramirez*, 334 F.3d at 861.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. The complaint's allegation that Dr. Kumar and RN Golding failed to provide appropriate medical treatment for plaintiff's fractured thumb states a cognizable Eighth Amendment claim and state-law claim for violation of Cal. Gov't Code § 845.6 against Dr. Kumar and RN Golding. The Court DISMISSES the equal protection claim with prejudice. The Court DISMISSES with leave to amend the equal protection claim and the claims against Warden Robertson. Plaintiff may either (1) file an amended complaint to address the deficiencies identified above or (2) proceed solely on the claims found cognizable above.

2. If plaintiff wishes to file an amended complaint, he must do so within **twenty-eight (28) days** of the date of this order. The amended complaint must include the caption and civil case number used in this order, Case No. C 19-06046 HSG (PR) and the words "AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint all the claims he wishes to present, including the ones already found cognizable above, and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the prior complaint by reference. Plaintiff may not

8

change the nature of this suit by alleging new, unrelated claims in the amended complaint. Failure to file an amended complaint in accordance with this order in the time provided will result in the initial complaint remaining the operative complaint, and this action proceeding solely on the claims found cognizable above. The Clerk shall include two copies of a blank complaint form with a copy of this order to plaintiff.

3. The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint (Dkt. No. 1), with all attachments thereto, and a copy of this order upon **defendants Dr. Kumar and RN Golding at Pelican Bay State Prison, 5905 Lake Earl Drive, Crescent City CA 95531.**

4. In order to expedite the resolution of this case, the Court orders as follows:

    a. No later than 91 days from the date this order is filed, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[1]

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon defendants no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No

---

[1] If defendants assert that plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

9

hearing will be held on the motion.

5. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

6. All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until defendants' counsel has been designated, plaintiff may mail a true copy of the document directly to defendants, but once defendants are represented by counsel, all documents must be mailed to counsel rather than directly to defendants.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely

fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

10. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: 11/27/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge