UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONNIE SCOTT,

             Plaintiff,

    v.

ERIC GOLDING, et al.,

             Defendants.

Case No.  19-cv-06046-HSG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; STAYING ACTION**

Re: Dkt. Nos. 61, 62

United States District Court
Northern District of California

      Plaintiff, an inmate at Folsom State Prison, has filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that defendants Pelican Bay State Prison ("PBSP") doctor D. Kumar and nurse E. Golding were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  Defendant Kumar has filed a summary judgment motion, Dkt. No. 62; Plaintiff has filed an opposition, Dkt. No. 66; and defendant Kumar has filed a reply, Dkt. No. 68. Defendant Golding has filed a summary judgment motion, Dkt. No. 61; Plaintiff has filed an opposition, Dkt. No. 65; and defendant Golding has filed a reply, Dkt. No. 687.  For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART defendants Golding and Kumar's motions for summary judgment; refers this action to the Pro Se Mediation Program for settlement proceedings; and stays this action.

### FACTUAL BACKGROUND

      The following facts are undisputed unless otherwise noted.

      On August 31, 2018, Plaintiff was attacked by two inmates during a riot.  Dkt. No. 65 at 6. Plaintiff fell to the ground and injured his right thumb while trying to break his fall.  His right thumb suffered a severe dislocation and multiple fractures.  Dkt. No. 65 at 6.  Plaintiff was issued a rules violation report (disciplinary report) for participating in the riot.  Dkt. No. 65 at 6.  Plaintiff

1    was ultimately found not guilty of the rules violation based upon favorable officer testimony.  Dkt.

2    No. 65 at 6.

3         On September 6, 2018, Plaintiff submitted a sick-call slip requesting medical attention for

4    his thumb.  Dkt. No. 65 at 6.  Dkt. No. 65 at 6.  Plaintiff told medical staff that he had hurt his

5    thumb playing basketball because he had not yet had his hearing for his rules violation report and

6    was concerned that discussing the riot would negatively impact the outcome of his hearing.  Dkt.

7    No. 65 at 6.

8    **I.      Initial Appointment with Defendant Golding (September 7, 2018)**

9         On September 7, 2018, Plaintiff was seen by defendant Golding in response to his sick-call

10   slip.  Dkt. No. 37-2 at 264-75, 363-68; Dkt. No. 65 at 6.  During this examination, Plaintiff

11   informed defendant Golding that his thumb had been injured a week ago; that he believed that this

12   thumb was broken; and that he was unable to apply pressure to his thumb while making his bed

13   because of the significant amount of pain he was experiencing.  Dkt. No. 65 at 6-7.  Plaintiff

14   demonstrated his inability to move his thumb and pointed out the significant swelling.  Dkt. No.

15   65 at 6-7.  Plaintiff insisted that defendant Golding provide him with medication to relieve the

16   pain and a splint to prevent further injury, but defendant Golding responded that Plaintiff did not

17   need a splint and to quit whining.  Defendant Golding provided Plaintiff with an over-the-counter

18   prescription that Plaintiff found insufficient to relieve the pain.  Defendant Golding submitted a

19   routine request for Plaintiff to be seen by a primary care provider ("PCP"), noting a possible

20   broken thumb, and promised Plaintiff that he would be scheduled for an appointment with his PCP

21   within fourteen days.  However, Plaintiff was not provided any medical attention until nearly a

22   month later, on October 4, 2018, which is outside of the timeframe set by prison regulations.  Per

23   these regulations, routine requests for medical attention must be fulfilled within two weeks.  To be

24   seen more quickly, the medical staff must submit an "urgent" request.  Dkt. No. 37-2 at 264-75;

25   Dkt. No. 65 at 6-7.  Defendant Golding provided Plaintiff with patient education materials

26   regarding "ulnar collateral ligament injury of the thumb," or a possible thumb sprain.  Dkt. No.

27   37-2 at 267-73.  The materials state that a thumb sprain is diagnosed with a medical history and

28   physical exam, and sometimes an x-ray.  Dkt. No. 37-2 at 271.  The materials state that the

United States District Court
Northern District of California

treatment for a sprain "usually involves keeping your thumb in a fixed position (*immobilization*) for a period of time . . . [by] apply[ing] a brace, cast, or splint to keep your thumb from moving until it heals," or surgery to connect the ligament to the bone. Dkt. No. 37-2 at 271. The materials also state that the health care provider may suggest exercises or physical therapy to strengthen the thumb. Dkt. No. 37-2 at 271.

**II.      Initial Appointments with defendant Kumar (October 4 and 11, 2018)**

On September 10, 2018, Plaintiff sent his PCP, defendant Kumar, a letter via institutional mail, informing defendant Kumar that he was in dire need of medical care. Plaintiff received no response. Dkt. No. 65 at 7. Defendant Kumar states that he never received this letter.

On October 4, 2018, Plaintiff was seen by defendant Kumar. Plaintiff initially reported that he was in lots of pain but did not answer defendant Kumar's repeated questions about the pain, only repeating, "I think it's broken, I think it's broken." Dkt. No. 37-2 at 304. Plaintiff responds that his statements "I think it's broken" clearly conveyed that he was in pain. Dkt. No. 65 at 7; Dkt. No. 66 at 7. Plaintiff states that defendant Kumar appeared to think he was lying when he stated that his thumb was broken. Dkt. No. 65 at 7; Dkt. No. 66 at 7. Plaintiff reported limited range of motion of his right thumb, and defendant Kumar noted a mild swelling at the base of the thumb. Plaintiff denied tingling or numbness. Defendant Kumar concluded that Plaintiff was not in pain at that time but had a little stiffness and diagnosed Plaintiff with possible tendinitis. Defendant Kumar ordered an x-ray and advised Plaintiff to refrain from extensive exercises on his right thumb and to take pain medication as needed. Dkt. No. 65 at 58; Dkt. No. 37-2 at 303-05.

The x-ray, taken on October 8, 2018, made the following findings: "Abnormal alignment across the first metacarpophalangeal joint suggestive of subluxation/dislocation. No identifiable fracture." Dkt. No. 37-2 at 396.

On October 11, 2018, defendant Kumar saw Plaintiff for a follow-up appointment to go over the x-ray. Defendant Kumar informed that Plaintiff that, based on the x-ray results, defendant Kumar had put in an urgent request for an orthopedic surgery evaluation for him and scheduled a follow-up appointment for Plaintiff. Dkt. No. 37-2 at 3, 317, 402. Plaintiff alleges

1    that, during this appointment, Defendant Kumar interpreted the x-ray as only showing a dislocated

2    thumb and did not offer him a splint.  Dkt. No. 65 at 8, 69; Dkt. No. 66 at 6.

3    **III.    Medical Treatment from October 19, 2018 to December 2018**

4           **A.    Meetings with Specialists**

5           From October 19 to late December 2018, Plaintiff was seen by two orthopedic surgeons,

6    Dr. Cross and Dr. Dowbak.

7           Plaintiff was initially seen via telemedicine by Dr. Cross on October 19, 2018, pursuant to

8    an urgent referral by defendant Kumar.  In relevant part, Dr. Cross summarized the appointment as

9    follows in his medical notes:

> Patient pain right thumb.
>
> History of present illness.  This is a 50-year-old patient for maintenance of traumatic injury to his right bone on August of this year.  He's been treated with x-rays and no splinting.
>
> . . .
>
> Exam: Patient presents with a significantly palmarly sublumed right first metacarpophalangeal joint with marked limitation especially in extension.  There is significant swelling and obvious deformity.
>
> He denies any numbness or change in sensation of his thumb in the balance of his hand.
>
> He denies any wrist pain.
>
> X-rays: Significant subluxation near dislocation of his first metacarpophalangeal joint all evidence of fractures.
>
> Assessment: Severe subluxation right first metacarpophalangeal joint.
>
> Plan: This patient has suffered significant injury with ligamentous injuries and instability and mallet deformity with chronic subluxation of this first metacarpophalangeal joint.
>
> He will require orthopedic evaluation by hand specialists with likely surgical repair.  I'm going to refer him to a hand specialist's (sic) my expertise with this significant amount of injury is limited.  He's agreed to proceed in this fashion and is also agreed to comply with the postoperative protection and rehabilitation required to achieve an acceptable result.

Dkt. No. 65 at 30-31.  Plaintiff alleges that Dr. Cross's reading of the x-rays differed from

defendant Kumar's interpretation in that, while defendant Kumar only saw a dislocated thumb, Dr.

Cross interpreted the x-ray as showing multiple fractures and concluded that Plaintiff had suffered

significant injury.  Plaintiff further alleges that defendant Kumar never informed Plaintiff of Dr.

United States District Court
Northern District of California

4

1   Cross's findings and that he did not learn of the fractures or other injuries associated with the

2   dislocation until December 6, 2018.  Dkt. No. 65 at 8.  Pursuant to Dr. Cross' recommendation,

3   defendant Kumar submitted an urgent referral for consultation with a hand surgeon, listing the

4   issue as "subluxation/dislocation first metacarpophalangeal joint."  Dkt. No. 66 at 125.  Plaintiff

5   argues that defendant Kumar violated the Eighth Amendment by listing the issue as a dislocation

6   instead of identifying the issue as a fracture, and thereby hindering the hand surgeon (Dr.

7   Dowbak)'s professional judgment and causing further injury to Plaintiff's thumb.  Dkt. No. 66-1 at

8   7.  Plaintiff also alleges that Dr. Cross ordered Defendants to provide him with a splint, but none

9   was provided.  Dkt. No. 66 at 7.

10          On November 1, 2018, pursuant to the urgent referral submitted by defendant Kumar,

11   Plaintiff was seen by Dr. Dowbak at San Joaquin General Hospital for a hand surgery evaluation.

12   Dr. Dowbak provided Plaintiff with a spica splint for the right thumb, requested a CT scan of the

13   thumb, and instructed Plaintiff to return in six weeks for a follow-up appointment.  Dkt. No. 37-2

14   at 4, 313.  Plaintiff alleges that Dr. Dowbak merely provided him with him a splint as a kind

15   gesture but warned that the splint would be ineffective because the thumb had already begun to

16   heal the wrong way. Dkt. No. 65 at 9; Dkt. No. 66 at 7.

17          On December 12, 2018, Plaintiff had a follow-up appointment with Dr. Dowbak.  Plaintiff

18   describes the appointment as follows.  Dr. Dowbak originally recommended that Plaintiff be

19   treated with an open reduction with pinning.  However, after reviewing Plaintiff's x-rays, Dr.

20   Dowbak concluded that nothing could be done to save Plaintiff's thumb.  Dr. Dowbak told

21   Plaintiff that his thumb had healed in the wrong direction and lacked a congruent joint.  Dr.

22   Dowbak also told Plaintiff that if the prison had not waited five months to have his thumb set and

23   put into a cast, Dr. Dowbak might have been able to save the thumb.  Dr. Dowbak stated that the

24   only available treatment option was fusion, which would result in Plaintiff losing complete

25   mobility in one of his thumb joints.  Because of the irreversible results of fusion, Dr. Dowbak

26   recommended that it be considered as a last resort and only if the pain persisted.  Dr. Dowbak

27   scheduled a follow-up appointment for five months later to determine whether fusion was

28   warranted.  Dkt. No. 65 at 9; Dkt. No. 66 at 7.

United States District Court
Northern District of California

//

**B.      Defendant Kumar**

Defendant Kumar provided Plaintiff with medical attention or treatment on October 22, November 6, November 16-17, December 6, and December 24, by conducting follow-up appointments, submitting referrals for evaluations by specialists, and ordering the medical diagnostics and procedures recommended by Drs. Cross and Dowbak.

The appointments on October 22, November 6, and December 6 were follow-up appointments.  On November 16, defendant Kumar ordered a CT scan of Plaintiff's right thumb, as requested by Dr. Dowbak.  On November 17, defendant Kumar ordered ibuprofen for Plaintiff's pain.  At the December 6, 2018 appointment, Plaintiff was provided with his CT scan results and learned for the first time that his thumb had fractured.  This prompted Plaintiff to file a grievance against defendant Kumar for failing to inform him of his injuries and to request an Olsen review of his medical file.  In reviewing his medical file, Plaintiff learned of Dr. Cross' findings.  Dkt. No. 65 at 8.

Plaintiff alleges that defendant Kumar never provided him with a split.  Dkt. No. 66 at 7.  The medical notes are unclear as to whether Plaintiff had a splint.  According to the medical notes, at the November 6, 2018 appointment, defendant Kumar gave Plaintiff a spica splint for his right thumb, Dkt. No. 37-2 at 5, 299-300, 402; at the December 6, 2018 appointment, Plaintiff had a splint on his right thumb, Dkt. No. 37-2 at 299; and at the December 24, 2018 appointment, Plaintiff did not have a splint and defendant Kumar ordered a splint, which was applied that day, Dkt. No. 37-2 at 296-97, 306, 314; Dkt. No. 65 at 41.

**C.      Defendant Golding**

Defendant Golding provided Plaintiff with medical attention or treatment on October 29 and November 14, assessing him for thumb pain and providing ibuprofen.  Dkt. No. 37-2 at 4, 234-43, 356-63; Dkt. No. 65 at 81; Dkt. No. 37-2 at 351-56.

**D.      Plaintiff's CT Scan Result**

On November 26, 2018, Plaintiff had a CT scan of his right thumb.  The CT scan made the following findings: partial dislocation of the first MCP joint, possible subtle hairline injury versus

United States District Court
Northern District of California

artifact along distal first metacarpal, and post-traumatic arthropathy at the base of the thumb.  Dkt. No. 65 at 48; Dkt. No. 37-2 at 395.

**IV.     Medical Treatment from mid-December 2018 to September 2019**

**A.     Deciding Against Surgery**

Over the next year, based on the recommendations made by specialists, defendant Kumar referred Plaintiff twice for hand surgery, first to Dr. Dowbak and then to Dr. Perry.  Both times, Plaintiff ultimately decided against the surgery.

In late December 2018, Dr. Kumar referred Plaintiff for orthopedic surgery per Dr. Dowbak's December 12, 2018 recommendation.  The surgery was scheduled for January 16, 2019, with a follow-up appointment scheduled for January 30, 2019.  Dkt. No. 37-2 at 307, 401, 408. On January 16, 2019, Plaintiff met with Dr. Dowbak.  In the medical notes, Dr. Dowbak reported that Plaintiff had very little pain and a functional thumb.  After discussing the benefits and risk of the surgery with Dr. Dowbak, Plaintiff decided that repairing the thumb was not warranted at the time; that he would use his hand for the next five months; and that he would consider fusion surgery only if movement were too painful.  Dkt. No. 65 at 40; Dkt. No. 37-2 at 8, 292-93, 296, 309.

In or around May 2019, Plaintiff was scheduled for a June 17, 2019 orthopedic surgery consult with Dr. Perry, per a request submitted by defendant Kumar.  On June 14, 2019, when LVN Dixon presented Plaintiff with the pre-operative paperwork for the meeting with Dr. Perry, Plaintiff refused to sign the paperwork, stating that he was refusing to have the surgery that PBSP was trying to make him have; that his surgeon told him that he did not need to have surgery on his thumb; and that it was none of PBSP's business what he and his surgeon had agreed upon.  Dkt. No. 37-2 at 10, 305.  Plaintiff informed medical staff that he refused to consent to a medical procedure that was "unwarranted" and involved significant risk.  Dkt. No. 65 at 9.  On June 17, 2019, Plaintiff met with Dr. Perry.  Dr. Perry requested occupational therapy for Plaintiff's right thumb to improve the range of motion and strength.  Dkt. No. 37-2 at 10, 308.  Dr. Perry agreed that surgery was not warranted and would leave him partially disabled.  Dr. Perry referred Plaintiff

United States District Court
Northern District of California

to a physical therapist, Michael Zinnig.  Dkt. No. 65 at 10.[1]  On July 1, 2019, Plaintiff told defendant Kumar that Dr. Perry had told him that surgery was not warranted at the time; that that he felt fine; and that he did not want surgery at the time.  Dkt. No. 37-2 at 289-90.

**B.      Defendant Kumar**

Defendant Kumar provided Plaintiff with medical attention or treatment on January 8, January 28, March 21, April 4, May 14, June 10, and July 1.  January 28 and April 4 were routine follow-up appointments regarding Plaintiff's right thumb.  On March 21, defendant Kumar referred Plaintiff for an optometry consult.  On January 8, May 14 and June 10, defendant Kumar ordered x-rays of Plaintiff's right thumb in preparation for his consults with Drs. Dowbak and Perry.  On July 1, Plaintiff informed defendant Kumar that he would not be proceeding with surgery.

**C.      Defendant Golding**

On March 21, 2019, Plaintiff was seen by defendant Golding for routine follow-up for his right thumb pain.  Defendant Golding's notes describe the appointment as follows.  Defendant Golding states that Plaintiff was "agitated, argumentative, explosive;" and that Plaintiff was upset that he had not been seen earlier about his broken glasses.  Defendant Golding unsuccessfully asked Plaintiff to calm down.  Defendant Golding asked custody staff to remove Plaintiff from the health clinic.  Plaintiff stated as he was leaving, "So now you are going to deny me medical care."  Defendant Golding responded, "No, I am not denying you medical care."  Plaintiff was given patient education materials for presbyopia and myopia.

On April 4, 2019, Plaintiff was seen by defendant Golding regarding his eyeglasses. Defendant Golding noted that Plaintiff had an order for an optometry consult on April 23, 2019. Dkt. No. 37-2 at 9, 108-115, 342-47.

---

[1] Despite Plaintiff and Dr. Perry agreeing on June 17, 2019, to cancel the surgery, Plaintiff's medical notes indicate that on June 21, 2019, RN Nolan saw Plaintiff for procedure preparation, provided him with patient education materials for finger dislocation and thumb fracture, and scheduled him for routine follow-up on July 1, 2019.  RN Nolan noted that Plaintiff had not returned the required pre-registration paperwork for his June 17, 2019, orthopedic appointment, and informed Plaintiff that Dr. Perry's office was again requesting that the paperwork be completed and returned.  Plaintiff refused.  Dkt. No. 37-2 at 11, 21-31.

United States District Court
Northern District of California

1    On April 12, 2019, Plaintiff was seen by defendant Golding for routine follow-up.

2    On June 7, 2019, defendant Golding provided Plaintiff with the pre-operative paperwork

3    for his June 17, 2019, appointment with Dr. Perry.  Dkt. No. 37-2 at 10, 65-71.  Plaintiff describes

4    the interaction as follows.  Defendant Golding attempted to obtain Plaintiff's consent to the fusion

5    surgery by asking Plaintiff to sign "intake forms for a surgical procedure."  Plaintiff told defendant

6    Golding that he would look over the forms before signing.  Dkt. No. 65 at 9.  Defendant Golding

7    reported that Plaintiff felt there was a conflict of interest between defendant Golding and Plaintiff.

8    Dkt. No. 37-2 at 394.

9    On September 9, 2019, defendant Golding saw Plaintiff for his complaint of a fingernail

10   contusion and follow-up for his right thumb injury, myopia, and onychomycosis (nail fungus).

11   Plaintiff was given patient education materials for his nail bed injury and advised that he should

12   put in a healthcare request if the nail injury did not resolve on its own.  Dkt. No. 37-2 at 12, 15-20,

13   330-35.

14   Plaintiff reports that, "at some point," defendant Golding attempted to antagonize him by

15   "making insinuating gestures with his thumb," and when Plaintiff expressed displeasure,

16   defendant Golding became annoyed and told Plaintiff to leave the clinic.  Plaintiff reported this

17   incident to an officer working in the clinic.  Dkt. No. 66 at 10.  Plaintiff does not specify the date

18   of this interaction.

19   **D.      Plaintiff's X-Ray Results**

20   Plaintiff's January 25, 2019 x-ray showed continued malalignment at the first MCP joint;

21   an old fracture deformity of the first metacarpal; and no identifiable acute fractures.  Dkt. No. 37-2

22   at 8.

23   Plaintiff's June 10, 2019 x-ray showed persistent misalignment of the first

24   metacarpophalangeal ("MCP") joint and first metacarpal deformity, no significant change, and no

25   identifiable acute fractures.  Dkt. No. 37-2 at 10.

26                              **DISCUSSION**

27   **I.    Summary Judgment Legal Standard**

28   Summary judgment is proper where the pleadings, discovery and affidavits show that there

United States District Court
Northern District of California

is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

## II.    Legal Standard for Deliberate Indifference to Serious Medical Needs Claim

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S.

97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *See McGuckin*, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  *See McGuckin*, 974 F.2d at 1060.  The defendant's actions must be the cause of the injury suffered by the plaintiff.  *Conn v. City of Reno*, 591 F.3d 1081, 1098-1102 (9th Cir. 2010), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011) (reversing grant of summary judgment to transporting police officers where children of pre-trial detainee who committed suicide presented evidence that transporting police officers (a) were subjectively aware decedent was at acute risk of harm (suicide); (b) failed to respond properly to that risk by informing jail officials; and (c) such failure was both actual and proximate cause of the decedent's suicide once at jail).

A claim of medical malpractice or negligence is insufficient to make out a violation of the

11

1    Eighth Amendment.  *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "A difference
2    of opinion between a prisoner-patient and prison medical authorities regarding treatment does not
3    give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly,
4    a showing of nothing more than a difference of medical opinion as to the need to pursue one
5    course of treatment over another is insufficient, as a matter of law, to establish deliberate
6    indifference.  *See Toguchi*, 391 F.3d at 1058.  To prevail on a claim involving choices between
7    alternative courses of treatment, a prisoner must show that the chosen course of treatment was
8    medically unacceptable under the circumstances and was chosen in conscious disregard of an
9    excessive risk to the prisoner's health.  *Id.* at 1058.

10   **III.    Defendant Golding's Summary Judgment Motion**

11           Defendant Golding argues that he is entitled to summary judgment on two grounds.  First,
12   defendant Golding argues that he did not personally participate in any act that deprived Plaintiff of
13   his federally protected rights because (1) when he first saw Plaintiff on September 7, 2018, he
14   provided appropriate nursing care consistent with prison policies and general nursing care
15   protocols by providing a nursing assessment, determining a possible thumb sprain, providing
16   Plaintiff with acetaminophen for pain, and referring Plaintiff for a follow-up with his primary care
17   physician in fourteen days; (2) when he saw Plaintiff for medical follow-up on October 29,
18   November 14, 2018, April 4 and 12, June 7, and September 9, 2019, he conducted nursing
19   assessments; and (3) though he did not provide Plaintiff a nursing assessment on March 21, 2019,
20   this was because Plaintiff would not calm down after being asked to do so.  Dkt. No. 31.  Second,
21   defendant Golding argues that there is no evidence that he acted with deliberate indifference
22   within the meaning of the Eighth Amendment because he provided Plaintiff with appropriate and
23   medically acceptable treatment and that Plaintiff's allegations state, at most, a difference of
24   opinion as to the medical treatment received.  Dkt. No. 31.

25           Plaintiff argues that defendant Golding violated the Eighth Amendment's prohibition on
26   deliberate indifference to his serious medical needs in the following ways.

27           First, Plaintiff argues that defendant Golding violated the Eighth Amendment on
28   September 7, 2018.  According to Plaintiff, on that day, defendant Golding knew that Plaintiff had

12

a possible broken thumb because Plaintiff showed him that his thumb was swollen and deformed and that he could not move the thumb, Plaintiff informed him that the pain affected his ability to do everyday activities, and Plaintiff informed him that he believed the thumb to be broken and that he required a splint.  Plaintiff argues that, given defendant Golding's awareness that Plaintiff's thumb was possibly broken, defendant Golding violated the Eighth Amendment when he failed to provide more immediate treatment – such as sending Plaintiff to the medical clinic that day to receive an x-ray that could determine the extent of Plaintiff's injuries and putting in an urgent referral for a follow-up appointment with a primary care physician that would have ensured that Plaintiff was seen quickly – and when he refused to provide Plaintiff with a splint or prescription pain medication.  Plaintiff argues that defendant Golding's actions and failure to act were not medically acceptable, pointing to Dr. Cross' statement that because prison officials had delayed in treating his thumb, Plaintiff's thumb could not be saved, and the only treatment option was fusion therapy.  ECF No. 65 at 17.

Second, Plaintiff argues that defendant Golding violated the Eighth Amendment on or about June 17, 2019, when he attempted to get Plaintiff to have unwarranted and risky hand surgery by pressuring Plaintiff to sign certain presurgical intake forms.  Dkt. No. 65 at 9.

Third, Plaintiff argues that defendant Golding violated the Eighth Amendment in two additional ways.  After he became aware that he had caused Plaintiff permanent damage, defendant Golding became overly attentive and concerned about Plaintiff's welfare by being present at every one of Plaintiff's clinic appointments.  Also, at one point, defendant Golding attempted to antagonize Plaintiff by making "insinuating gestures with his thumb."  In response, Plaintiff complained about defendant Golding's overall conduct.  Defendant Golding then became annoyed and had Plaintiff removed from the clinic under the false pretext that Plaintiff had created a disturbance.  Dkt. No. 65 at 9.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of fact as to whether defendant Golding violated the Eighth Amendment on September 7, 2018.  According to both the patient education materials provided to Plaintiff and Plaintiff's conversation with Dr. Cross, the appropriate medical treatment for a broken or sprained

1  thumb was a splint and prompt treatment.  Yet the nursing care provided on September 7, 2018,

2  was the general assessment provided at every nursing appointment and the provision of over-the-

3  counter pain medication that an inmate can obtain at the canteen.  Defendant Golding proffers the

4  conclusory statement that the "nursing care was appropriate [and] consistent with CDCR nursing

5  care policies and general nursing care protocols . . ," Dkt. No. 31, without pointing to specific

6  evidence.  This conclusory statement is contradicted by the patient education materials and Dr.

7  Cross' alleged statement that a thumb sprain should be immobilized or, at a minimum, that the

8  patient should be provided exercises to strengthen the thumb.  Defendant Golding has failed to

9  demonstrate that there is no triable issue of fact as to whether the treatment provided – the typical

10  general nursing assessment, over-the-counter pain medication, a request for a follow-up

11  appointment within fourteen days, and no further medical attention for almost a month –

12  constituted reasonable steps to abate the substantial risk of serious harm posed by a potential

13  broken thumb.

14          However, Plaintiff has not demonstrated that there is a triable issue of fact as to whether

15  defendant Golding violated the Eighth Amendment (1) on June 17, 2019, when he pressured

16  Plaintiff to sign certain presurgical forms; (2) by being overly attentive and present at all of

17  Plaintiff's appointments; (3) by making "insinuating gestures with his thumb;" or (4) by having

18  Plaintiff removed from the clinic on a single occasion.  By June 17, 2019, Plaintiff had been

19  provided with frequent care for his broken thumb, including x-rays, CT scans, consultations with

20  outside specialists, and follow-up appointments two to three times a month.  Even making all

21  inferences in Plaintiff's favor, as the Court must at this stage, these interactions did not cause harm

22  to Plaintiff, did not interfere with his medical treatment, and did not constitute failures to take

23  reasonable steps to abate the serious risk of substantial harm posed by Plaintiff's broken thumb.

24          Accordingly, the Court DENIES defendant Golding's summary judgment motion with

25  respect to the claim that defendant Golding violated the Eighth Amendment on September 7,

26  2018, when he failed to provide Plaintiff with a splint, and GRANTS defendant Golding's

27  summary judgment motion with respect to the remainder of the medical treatment provided by

28  defendant Golding.

United States District Court
Northern District of California

1

**IV.    Defendant Kumar's Summary Judgment Motion**

2          Defendant Kumar argues that he is entitled to summary judgment on two grounds.  First,

3   defendant Kumar argues that he did not personally participate in any act that deprived Plaintiff of

4   his federally protected rights because (1) when he first saw Plaintiff on October 4, 2018, the x-ray

5   taken of the right thumb showed no identifiable fracture, and Plaintiff was not in pain at the time

6   and denied feeling tingling or numbness; (2) he saw Plaintiff for medical follow-up nine times

7   between October 11, 2018 and July 1, 2019, during which he conducted clinical evaluations,

8   provided pain medication, ordered diagnostic imaging, and arranged for consultations with

9   specialists; (3) he offered Plaintiff a splint on October 11, 2018, which Plaintiff declined; and

10  (4) he requested hand surgery evaluations for Plaintiff six times over a seven-month time period.

11  Dkt. No. 37.  Second, defendant Kumar argues that there is no evidence that he acted with

12  deliberate indifference within the meaning of the Eighth Amendment because he provided Plaintiff

13  with appropriate and medically acceptable treatment and that Plaintiff's allegations state, at most,

14  a difference of opinion as to the medical treatment received.

15         Plaintiff argues that defendant Kumar violated the Eighth Amendment's prohibition on

16  deliberate indifference to his serious medical needs in the following ways.

17         First, defendant Kumar violated the Eighth Amendment by not seeing Plaintiff prior to

18  October 4, 2018.  Plaintiff alleges that, on September 10, 2018, he informed defendant Kumar via

19  institutional mail that he needed immediate medical attention for a broken thumb but defendant

20  Kumar did not respond.  Plaintiff further alleges that defendant Kumar did not see Plaintiff within

21  the fourteen days required by prison regulations for routine scheduled healthcare follow-up

22  appointments.

23         Second, defendant Kumar violated the Eighth Amendment by failing to offer Plaintiff a

24  splint, even after Dr. Cross recommended a splint.

25         Third, defendant Kumar violated the Eighth Amendment by failing to inform Plaintiff that

26  that the x-ray showed evidence of fracture.

27         Fourth, defendant Kumar violated the Eighth Amendment by preventing Dr. Dowbak from

28  providing appropriate medical care when defendant Kumar failed to accurately describe Plaintiff's

15

condition as a fracture, and instead described it as a dislocation. If Dr. Dowbak had been fully briefed as to Plaintiff's condition, Dr. Dowbak might not have suggested observing Plaintiff's thumb for five months and might have been able to schedule Plaintiff for immediate surgery. Dkt. No. 66 at 6-9.

Fifth, defendant Kumar violated the Eighth Amendment because he did not ensure that Plaintiff was seen immediately by an orthopedic surgeon after defendant Kumar learned of the potential broken thumb. Instead, defendant Kumar allowed Plaintiff to wait two weeks before he was seen by Dr. Cross. Dkt. No. 66 at 16.

Sixth, defendant Kumar violated the Eighth Amendment when he removed Plaintiff from the "urgent" care that was prescribed by Dr. Cross and placed Plaintiff back on "routine" care, which is a status for inmate-patients that do not have serious medical needs.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of fact as to whether defendant Kumar violated the Eighth Amendment by not examining Plaintiff prior to October 4, 2018, and by failing to provide Plaintiff with a splint prior to November 6, 2018.[2]

There is a factual dispute as to whether defendant Kumar received Plaintiff's September 10, 2018 letter reporting that he was in dire need of medical care. At summary judgment, the Court must assume the truth of the evidence set forth by the nonmoving party regarding disputed material facts. The Court therefore must presume that Plaintiff's September 10, 2018 letter, addressed to defendant Kumar and sent via institutional mail, reached defendant Kumar. Plaintiff did not receive any medical care between September 10, 2018 and October 4, 2018, when he met with defendant Kumar for the first time regarding his right thumb; and prison regulations required that inmates be seen within fourteen days of requesting medical attention. There is therefore a triable issue of fact as to whether defendant Kumar violated the Eighth Amendment when he

---

[2] Plaintiff's medical records contradict his claim that he was not offered a splint. According to his medical records, a splint was applied on November 6, 2018; Plaintiff had this splint through December 6, 2018; and the splint was reapplied on December 24, 2018. Dkt. No. 37-2 at 296-300. At summary judgment, the Court has to assume the truth of Plaintiff's assertions that he was not offered a splint prior to November 6, 2018.

16

waited nearly a month to respond to Plaintiff's request for medical attention.

There is also a triable issue of fact as to whether defendant Kumar violated the Eighth Amendment by failing to provide Plaintiff with a splint prior to November 6, 2018.  Making all reasonable inferences in Plaintiff's favor, defendant Kumar was aware on October 4, 2018, that Plaintiff likely had a broken thumb.  Plaintiff's statement, "I think it's broken" in reference to his thumb indicated that he was in pain; Plaintiff had reported the thumb as broken a month earlier; Plaintiff continued to feel pain in his thumb a month later; Plaintiff reported limited range of motion of the right thumb; and defendant Golding's medical notes for the September 7, 2018 appointment stated that Plaintiff had a possible broken thumb.  Although the October 8, 2018 x-ray showed no identifiable fracture in the right thumb, the patient education materials recommended a splint for treatment of a sprain and Dr. Cross and Dr. Dowbak both recommended a splint on October 18, 2018, and November 1, 2018, respectively.  There is therefore a triable issue of fact as to whether defendant Kumar failed to take reasonable steps to abate a substantial risk of serious harm to Plaintiff when he failed to offer Plaintiff a splint prior to November 6, 2018.

However, Plaintiff has not demonstrated that there is a triable issue of fact as to whether defendant Kumar violated the Eighth Amendment by (1) by not informing Plaintiff that that the x-ray showed evidence of fracture; (2) by describing Plaintiff's condition as a dislocation instead of a fracture; (3) by allowing Plaintiff to wait two weeks to see an orthopedic surgeon; and (4) by shifting Plaintiff from "urgent" care to "routine" care.  As explained in further detail below, these actions did not violate the Eighth Amendment because defendant Kumar took reasonable steps to address Plaintiff's serious medical needs; these actions (or decisions not to act) did not disregard the risk of serious harm to Plaintiff; and/or these actions (or decisions not to act) did not cause the harm to Plaintiff, which Plaintiff has identified as a permanently non-functional right thumb.

The record shows that, after defendant Kumar reviewed Plaintiff's October 8, 2018 x-ray, he immediately submitted an urgent referral for Plaintiff to be seen by an orthopedic surgeon. From October 19, 2018 to December 2018, defendant Kumar had Plaintiff seen by two specialists; followed up with Plaintiff three times; and ordered a CT scan.  In 2019, defendant Kumar twice

approved hand surgery for Plaintiff; ordered the necessary x-rays; and had two follow-up appointments. In addition, defendant Kumar's description of Plaintiff's injury as a dislocation or subluxation was consistent with the x-ray and CT scan results. Plaintiff's x-rays and CT scans described the injury as a subluxation or dislocation, Dkt. No. 37-2 at 8, 10, 395, 396; and Plaintiff's x-rays on October 8, 2018, January 25, 2019, and June 10, 2019 saw no identifiable fractures at the time, Dkt. No. 32-2 at 8, 10, 396. Defendant Kumar's description of Plaintiff's injury was also consistent with Dr. Cross's findings. Although Dr. Cross did conclude that there was evidence of fractures, his final assessment was subluxation. Dr. Cross described the x-ray as showing "[s]ignificant subluxation near dislocation of this first metacarpophalangeal joint all evidence of fracture," and then diagnosed Plaintiff has having "[s]evere subluxation right first metacarpophalangeal joint." Dkt. No. 65 at 30.

Defendant Kumar's failure to inform Plaintiff on October 11, 2018 that that the x-ray showed evidence of fracture and interpreting the x-ray as showing a dislocated thumb did not violate the Eighth Amendment because his description of Plaintiff's injury as a subluxation was consistent with the October 8, 2018 x-ray result; because defendant Kumar took reasonable steps to address the substantial risk of serious harm to Plaintiff; and because it did not cause Plaintiff harm. The record shows that subsequent to the October 11, 2018 meeting, defendant Kumar took the following reasonable steps to address Plaintiff's medical needs. On October 18, 2018, defendant Kumar put in an urgent request for a hand surgery evaluation for Plaintiff; a week later, on October 22, 2018, he saw Plaintiff for a follow-up appointment; on November 1, 2018, he had Plaintiff seen by a hand surgeon; on November 6, 2018, he had a follow-up appointment with Plaintiff; on November 16, 2018, he ordered a CT scan of Plaintiff's thumb per Dr. Dowbak's request; on November 17, 2018, he ordered ibuprofen for Plaintiff's pain; on November 26, 2018, he had Plaintiff undergo a CT scan on his right thumb; and on December 6, 2018, he saw Plaintiff for a follow-up appointment and provided Plaintiff with his CT scan results. Moreover, this failure to inform was not the cause of the right thumb being permanently non-functional. Outside of the failure to provide a splint, there is nothing in the record that indicates that identifying the injury as a fracture would have resulted in different medical treatment by Dr. Dowbak (or other

18

1    doctors), or that the treatment provided was not appropriate for a fracture.  In addition, Dr.

2    Dowbak also diagnosed Plaintiff as having a dislocated metacarpophalangeal joint and read the

3    CT scan as showing dislocation.  Dkt. No. 37-2 at 417-20.  Dr. Dowbak did not assess Plaintiff as

4    having a fracture in his medical notes.  Dkt. No. 37-2 at 417-20.

5         The two-week delay before Plaintiff was seen by an orthopedic surgeon (between October

6    4, 2018, when he was first seen by defendant Kumar and October 19, 2018, when he was seen by

7    Dr. Cross) did not violate the Eighth Amendment because Plaintiff has not provided any evidence

8    indicating that the delay was unreasonable or that the delay caused him harm.  Neither Dr. Cross

9    nor Dr. Dowbak indicated that Plaintiff required immediate treatment of any sort beyond a right

10   thumb splint.  Dr. Cross recommended referral to a hand specialist with likely surgical repair; Dr.

11   Dowbak scheduled a surgery for four weeks after his second appointment with Plaintiff; and both

12   Dr. Cross and Dr. Perry agreed that Plaintiff should delay or forgo the surgery if possible.  There

13   is nothing in the record from which it can be reasonably inferred that it was medically necessary to

14   be seen sooner by an orthopedic surgeon.  At most, the record shows a difference of opinion

15   regarding medical treatment.

16        Finally, there is no indication that the reclassification of Plaintiff as needing "routine" care

17   instead of "urgent" care delayed Plaintiff's medical treatment.  Defendant Kumar marked his

18   referrals as "urgent" from October 2018 through early December 2018, and began marking his

19   referrals as "routine" starting December 14, 2018.  *See* 37-2 at 401-02.  The shift to "routine"

20   referrals was consistent with the specialists' recommendations.  Drs. Cross, Dowbak, and Perry

21   did not recommend immediate surgery.  In the December 12, 2018 appointment, Dr. Dowbak

22   recommended surgery within three to four weeks, and surgery was scheduled for January 16,

23   2019, with a follow-up appointment on January 30, 2019.  Dkt. No. 37-2 at 401-02.

24        For the reasons set forth above, the Court DENIES defendant Kumar's summary judgment

25   motion with respect to the claims that defendant Kumar violated the Eighth Amendment when he

26   failed to provide Plaintiff with medical treatment prior to October 4, 2018 or provide a splint prior

27   to November 6, 2018, and GRANTS defendant Kumar's summary judgment motion with respect

28   to the remainder of the medical treatment provided by defendant Kumar.

United States District Court
Northern District of California

19

**CONCLUSION**

For the foregoing reasons, the Court orders as follows.

1.      The Court GRANTS IN PART AND DENIES IN PART defendant Golding's motion for summary judgment.  Dkt. No. 61.  The Court DENIES defendant Golding's summary judgment motion with respect to the claim that defendant Golding violated the Eighth Amendment on September 7, 2018, when he failed to provide Plaintiff with a splint, and GRANTS defendant Golding's summary judgment motion with respect to the remainder of the medical treatment provided by defendant Golding.

2.      The Court GRANTS IN PART AND DENIES IN PART defendant Golding's motion for summary judgment.  Dkt. No. 62.  The Court DENIES defendant Kumar's summary judgment motion with respect to the claims that defendant Kumar violated the Eighth Amendment when he failed to provide Plaintiff with medical treatment prior to October 4, 2018 or provide a splint prior to November 6, 2018, and GRANTS defendant Kumar's summary judgment motion with respect to the remainder of the medical treatment provided by defendant Kumar.

3.      The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program to address the remaining Eighth Amendment claims: whether defendant Golding violated the Eighth Amendment on September 7, 2018 when he failed to provide Plaintiff with a splint and whether defendant Kumar violated the Eighth Amendment when he failed to provide Plaintiff with a splint prior to November 6, 2018. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit. Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon. The Clerk is directed to serve Magistrate Judge Illman with a copy of this order and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the Court's electronic filing database.

4.      In view of the referral, further proceedings in this case are hereby STAYED.  The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.  If the case

is not settled, the Court will enter a new scheduling order for further proceedings.

This order terminates Dkt. Nos. 61, 62.

**IT IS SO ORDERED.**

Dated:  5/18/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge